UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DANIEL PLUSTACHE                          CIVIL ACTION

VERSUS                                    NO: 18-4844

CITY OF NEW ORLEANS, ET AL                SECTION: "S" (3)

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that defendant's **Motion for Judgment on the Pleadings**

(Rec. Doc. 118) is **GRANTED**, and plaintiff's federal claims against all defendants are

**DISMISSED** for failure to state a claim. Plaintiff's state law claims are dismissed for lack of

jurisdiction.

## I. BACKGROUND

This matter arises from alleged workplace discrimination at the New Orleans Police

Department ("NOPD"). Plaintiff, Daniel Plustache, an 18-year NOPD veteran, claims that

superiors created a hostile work environment leading to his constructive discharge in response to

plaintiff's "whistleblowing" in 2013, when he was working in the Computer Forensic Unit, and

reported to his chain of command that the unit, which was funded in part by a Patrick Taylor

Foundation grant, was violating the directives of the grant. According to the complaint,

thereafter, various NOPD employees initiated unjustified disciplinary proceedings with the

NOPD's Public Integrity Bureau ("PIB") until finally in May 2014, when Plustache filed a lawsuit

in Orleans Parish Civil District Court alleging that the City of New Orleans and multiple NOPD

employees retaliated against him.

Subsequently, in July 2015, an additional complaint regarding Plustache was referred to the PIB, stemming from his unlawful detention of Derrick LaFrance in connection with a criminal investigation. In that incident, the PIB charged Plustache with false imprisonment; discrimination; failure to collect, preserve and identify evidence in an arrest situation; verbal intimidation; lack of professionalism; unauthorized force; failure to adhere to instructions from an authoritative source regarding arrests; neglect of duty relative to arrest of a wanted person; neglect of duty relative to identification of suspects on crime scenes; and violations of NOPD's policy on honesty and truthfulness. Five of the charges were sustained by the PIB.

Plustache alleges that these charges precipitated Civil Service Commission Disciplinary proceedings against him, which were still pending at the time of the filing of the Amended Complaint. Plustache alleges in the lawsuit that the Assistant City Attorney prosecuting the charges, defendant Elizabeth Robins, made damaging misrepresentations and withheld discoverable documents related to the proceeding. He also alleges that he believes Robins instructed others to withhold documents from him and his counsel.

Plustache further alleges that the discrimination culminated in an attempted arrest and jailing for no reason – though ostensibly related to the detention of LaFrance – which he learned of on May 11, 2017 from an anonymous source at the District Attorney's office and that he confirmed through a public records request on June 9, 2017.[1] While Plustache has not identified

_____

[1] Amended Cmplt. 25-26.

what document confirmed his belief, the record includes a letter from defendant, Sgt. Arlen

Barnes, to Graymond Martin, First Assistant District Attorney, in which Barnes writes: "This

correspondence is in reference to the attached N.O.P.D. incident report documented under

N.O.P.D. Item Number F-17868-16. Please advise if your office will pursue criminal charges for

False Imprisonment on Officers Daniel Plustache and John Bakula."[2] No charges were ever

brought and Plustache was never arrested.

On August 28, 2018, plaintiff resigned from the NOPD, "in order to remove himself from

continued contact with the NOPD defendants and the real potential dangers of injury and even

death . . . ."[3] According to Plustache, if imprisoned he would have been targeted due to his status

as a police officer and harmed or killed in prison. Thus, he contends his resignation was a

constructive discharge.

Plustache filed the instant suit on May 11, 2018. He filed an EEOC complaint on June 14,

2019. On September 10, 2019, the EEOC issued its Notice of Suit Rights, and plaintiff

subsequently amended his complaint. Named as defendants are the City of New Orleans, former

NOPD Superintendent Michael Harrison, Deputy Superintendent Arlinda Westbrook, Captain

Simon Hargrove, Lieutenant Gwendolyn Nolan, Lieutenant Darryl Watson, Sergeant Jean Jordan,

former Deputy Superintendent Kirk Bouyelas, retired Sergeant Arlen Barnes, and Deputy City

Attorney Elizabeth Robins. Plustache alleges federal claims for discrimination under Title VII,

---

[2] Rec. Doc. 118-10. The letter is apparently the basis of Plustache's belief that Barnes attempted to initiate his arrest.

[3] Amd. Cmplt. 29.

3

42 U.S.C.A. § 2000e-5, et seq., and claims of civil rights violations under section 42 U.S.C.

§1983, as well as state law claims for defamation, discrimination, emotional distress, and

negligence. Defendants have moved for judgment on the pleadings, or alternatively for summary

judgment, on all of the claims against them.

## II. LEGAL STANDARD

***Motion for Judgment on the Pleadings***

A party may move for judgment on the pleadings after an answer has been filed.

Fed.R.Civ.P. 12(c). "A motion for judgment on the pleadings under Rule 12(c) is subject to the

same standard as a motion to dismiss under Rule 12(b)(6)." Doe v. MySpace, Inc., 528 F.3d 413,

418 (5th Cir. 2008). "To survive a Rule 12(b)(6) motion to dismiss, 'enough facts to state a claim

for relief that is plausible on its face' must be pleaded." In re Katrina Canal Breaches Litig., 495

F.3d 191, 205 (5th Cir. 2007) (quoting Bell Atl. v. Twombly, 550 U.S. 544 (2007). A claim is

plausible on its face when the plaintiff pleads facts from which the court can "draw the

reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal,

556 U.S. 662, 678 (2009). "Factual allegations must be enough to raise a right to relief above the

speculative level, on the assumption that all the allegations in the complaint are true (even if

doubtful in fact)." Twombly, 550 U.S. 544, 555 (citations omitted). The court "must accept all

well-pleaded facts as true and view them in the light most favorable to the non-moving party." In

re S. Scrap Material Co., LLC, 541 F.3d 584, 587 (5th Cir. 2008). However, the court need not

accept legal conclusions couched as factual allegations as true. Iqbal, 556 U.S. at 678.

In considering a motion to dismiss for failure to state a claim, a district court may

4

consider only the contents of the pleading and the attachments thereto. Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498 (5th Cir. 2000) (citing Fed. R. Civ. P. 12(b)(6)).  However, the district court "may also consider documents attached to either a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims." Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp., 748 F.3d 631, 635 (5th Cir. 2014).

## III. DISCUSSION

### A. 42 U.S.C. Section 1983 Claims

Title 42, section 1983 of the United States Code provides a remedy against every person, who under color of state law, deprives another of any rights secured by the Constitution and laws of the United States. Section 1983 is not itself a source of substantive rights; it merely provides a method for vindicating federal rights conferred elsewhere. Olabisiomotosho v. City of Hous., 185 F.3d 521, 525 n. 3 (5th Cir. 1999). "To pursue a claim under section 1983, a plaintiff must: (1) allege a violation of rights secured by the Constitution or laws of the United States, and (2)  that the alleged deprivation was committed by a person acting under color of state law." Sw. Bell Tel., LP v. City of Hous., 529 F.3d 257, 260 (5th Cir. 2008) (internal quotations and citations omitted). Further, the complaint must allege that the constitutional or statutory deprivation was intentional or due to deliberate indifference and not the result of mere negligence. Farmer v. Brennan, 511 U.S. 825 (1994). A suit against public officials under section 1983 must include a short and plain statement of plaintiff's complaint that is factual and not conclusory. Schultea v. Wood, 47 F.3d 1427, 1433 (5th Cir. 1995) (en banc).

5

While plaintiff's amended complaint does not link his section 1983 claims to a specific constitutional violation, he alleges his section 1983 claims are for "civil rights and police abuse violations" and "[t]he attempted arrest and emotional upset and the rooting of the attempted arrest being in Retaliation for his original lawsuit involving claims of racial animus, as well as the NOPD co-worker defendants' abuse of police powers and processes," and for "constructive termination."[4] In his opposition to the motion to dismiss, he clarifies that the section 1983 claims are for violation of his rights guaranteed by the Fourth Amendment, the Eighth Amendment, and the Fourteenth Amendment.[5]

### 1. Fourth Amendment Claims

With respect to the Fourth Amendment, plaintiff argues that his Fourth Amendment rights were violated by the "threat of arrest and incarceration" and the "contemplation" that even if defendants failed to arrest him, they would "likely not end their efforts to damage him severely."[6]

The Fourth Amendment ensures that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause." U.S. CONST. amend. IV. The protections of the Fourth Amendment attach "whenever a police officer accosts an individual

---

[4] Amd. Cmplt. 6, 27-28, 32-33.

[5] Pl's Memo in Opp. 51, 54.

[6] Id. at 51.

and restrains his freedom to walk away." Lincoln v. Turner, 874 F.3d 833, 844 (5th Cir. 2017)

(quoting Terry v. Ohio, 392 U.S. 1, 16 (1968)). "To state a claim for unlawful seizure, plaintiffs

must adequately allege they were seized without legal justification." Flores v. Rivas, 2019 WL

5070182, at *6 (W.D. Tex. Aug. 11, 2019) (citing Lincoln, 874 F.3d at 840). A seizure is

effected when a police officer, "by means of physical force or show of authority, has in some way

restrained the liberty of a citizen." Terry, 392 U.S. 1, 19 n. 16. To prevail on a section 1983 false

arrest claim, a plaintiff must show that he was arrested without probable cause. Thomas v.

Pohlmann, 681 F. App'x 401, 406 (5th Cir. 2017) (citing  Burge v. Par. of St. Tammany, 187

F.3d 452, 480 (5th Cir. 1999).

In the instant case, plaintiff does not allege that he was seized or arrested. His

memorandum acknowledges that his claims are premised on what he perceived to be an

attempted arrest, and his contemplation of what the consequences of an arrest would be. These

allegations fail to state a claim for a violation of the Fourth Amendment redressable by section

1983.

## 2. Eighth Amendment Claims

The Eighth Amendment prohibits the infliction of cruel and unusual punishment. With

respect to the Eighth Amendment, plaintiff argues that defendants subjected him to cruel and

unusual punishment "by their blatant and obvious abuse of police powers in seeking his arrest

and jailing. . . . "[7]

---

[7] Id. at 54

7

The Eighth Amendment "was designed to protect those convicted of crimes." Ingraham v. Wright, 430 U.S. 651, 664 (1977). "The primary purpose of (the Cruel and Unusual Punishments Clause) has always been considered, and properly so, to be directed at the method or kind of punishment imposed for the violation of criminal statutes . . . ." Id. at 667 (internal quotations omitted). "In the few cases where the Court has had occasion to confront claims that impositions outside the criminal process constituted cruel and unusual punishment, it has had no difficulty finding the Eighth Amendment inapplicable." Id. at 667–68.

Plaintiff has not alleged that he has been convicted of a crime, and thus he has not been subject to punishment as a result that could be determined to be cruel and unusual. Plaintiff has failed to adequately allege an Eighth Amendment claim redressable by section 1983.

### 3. Fourteenth Amendment Claims

Plaintiff argues that the defendants violated his rights guaranteed by the Fourteenth Amendment. He does not specify whether his claim is premised on the substantive or procedural due process rights or the equal protection clause. The due process clause prohibits a state from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. Thus, to state a claim, a plaintiff must, at a minimum, allege a deprivation of life, liberty, or property. Plaintiff argues that he suffered an attempted deprivation, because defendants attempted to secure his unlawful arrest. An attempted deprivation simply does not state a substantive due process claim. Further, the Supreme Court has specifically held that for claims in which a petitioner seeks redress for a violation of his right to be free of prosecution without probable cause, "it is the Fourth Amendment, and not substantive due process, under

8

which [plaintiff's] claim must be judged." Albright v. Oliver, 510 U.S. 266, 271 (1994). As discussed supra, never having been arrested or prosecuted, plaintiff simply does not state a Fourth Amendment claim.

To the extent plaintiff suggests that denial of his public records requests constituted a denial of procedural due process, "a failure to honor a public records request is a violation of state law only and does not implicate any federal constitutional or statutory rights." Lewis v. Jackson, 2016 WL 1103904, at *4 (M.D. La. Mar. 1, 2016), report and recommendation approved, 2016 WL 1092648 (M.D. La. Mar. 21, 2016) (citations omitted).

Plaintiff also argues that defendants, through their "wanton or disparate abuse of police power in threatening to arrest, incarcerate and ruin the Petitioner simply for attempting to do his job," violated his Title VII rights.[8] He further argues that because Title VII confers substantive rights, it gives rise to liability under section 1983.

Analyzing the relationship between Title VII and section 1983, the Fifth Circuit has determined that "Title VII does create rights secured by the laws of the United States, as section 1983 requires. Section 1983, however, is not an available remedy for deprivation of a statutory right when the statute, itself, provides an exclusive remedy for violations of its own terms. . . . " Johnston v. Harris Cty. Flood Control Dist., 869 F.2d 1565, 1574 (5th Cir. 1989). While it is true that "when a public employer's conduct violates both Title VII and a separate constitutional or statutory right, the injured employee may pursue a remedy under section 1983 as well as under

_____

[8] Id.

9

Title VII," in this case, plaintiff has failed to state a claim under any other constitutional bases. <u>Johnston</u>, 869 F.2d at 1573. Thus, plaintiff's Title VII claims are premised on a violation of Title VII by its terms, and are not cognizable under section 1983. They are analyzed as such below. Further, because plaintiff has failed to allege a violation of his constitutional rights, all of plaintiff's section 1983 claims, against all defendants, are dismissed for failure to state a claim.

## B. Title VII Claims

The court having dismissed plaintiff's section 1983 claims, plaintiff's sole remaining federal claims are brought under Title VII. However, "[o]nly employers as defined in Title VII are prohibited from discriminating against individuals with respect to their compensation, terms, conditions, or privileges of employment. Thus, the relationship between the plaintiff and defendant in a Title VII action must be one of employment." <u>Smith v. Amedisys Inc.</u>, 298 F.3d 434, 442 (5th Cir. 2002) (citations and quotations omitted). Accordingly, plaintiff's Title VII claims are available only against his employer, which he alleges is the City of New Orleans, and all Title VII claims against the other defendants are dismissed.

Plaintiff alleges four identifiable Title VII claims: workplace retaliation, racial discrimination, hostile work environment, and constructive discharge.[9] Defendants move to dismiss all plaintiff's Title VII claims except for constructive discharge as time-barred. Plaintiff

---

[9] Plaintiff also alleges a "whistleblower" claim, however, there is no Title VII cause of action for "whistleblowing." <u>Griffith v. City of New Orleans</u>, 2014 WL 1796689, at *1 (E.D. La. May 6, 2014) ("Title VII is not a whistleblowing statute. Title VII does not protect a party who reports alleged malfeasance in a workplace when that malfeasance is not an employment practice prohibited under the statutory scheme.") .

opposes, arguing that his claims are saved by the continuing violation doctrine.

In Louisiana, an aggrieved individual must file a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the alleged unlawful employment practice. Schexnaydre v. Entergy Operations, Inc., 2016 WL 347574 at *1 (E.D. La. January 28, 2016) (citing Conner v. Louisiana Dept. of Health and Hospitals, 247 Fed. Appx. 480, 481 (5th Cir. 2007)). Within 90 days of receiving a right to sue letter from the EEOC, the individual must file suit. Firle v. Mississippi State Dept. of Education, 762 F.2d 487, 488 (5th Cir. 1985).

In this case, plaintiff alleges that he filed the EEOC charges attached to the Amended Petition on June 14, 2019. Three hundred days prior is August 19, 2018. Accordingly, to be both timely and fully exhausted, the acts complained of must have occurred between August 18, 2018 and June 14, 2019. The only discrete act alleged by plaintiff within this time frame is his resignation from NOPD on August 28, 2018. Therefore, defendants contend that the only timely claim raised in plaintiff's Amended Complaint is for constructive termination, and all other claims should be dismissed. Plaintiff opposes, arguing that his claims involve a years-long pattern of harassment that constitute continuing violations, which extend the time to file and render his claims timely.

The Supreme Court has held that the continuing violations doctrine does not apply to discrete violations of Title VII. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002) "Discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113,

(2002). "Each discrete discriminatory act starts a new clock for filing charges alleging that act."
Id.  However, hostile work environment claims are "different in kind" and must be analyzed
differently. Id. at 115. A "hostile work environment claim . . . will not be time barred so long as
all acts which constitute the claim are part of the same unlawful employment practice and at least
one act falls within the time period." Id. at 122.

> In this case, in connection with his hostile work environment claim, plaintiff
>
> seeks here to have this Court allow the most recent tortuous [sic] act, his first
> learning of the defendant NOPD actor's abuse of process  . . . in seeking his
> unwarranted arrest and prosecution, to those earlier interrelated acts of continuous
> harassment, false accusations and gratuitous PIB investigations, baseless Civil
> Service litigation . . . as well as the actual adverse employment action by
> defendants of having frozen the petitioner's promotion opportunities.[10]

Thus, plaintiff acknowledges that the most recent action supporting his hostile work environment
claim, defendants' allegedly seeking his unwarranted arrest, accrued when he first learned of it on
May 11, 2017, outside the applicable timeframe. Accordingly, even to the extent that the
complained of actions prior to the purported arrest-seeking violation are part of a continuous
violation culminating in that act, they are time-barred because the last act precedes plaintiff's
filing of an EEOC complaint by more than 300 days. Thus, plaintiff's Title VII hostile work
environment claims are time-barred.

### Constructive Discharge Retaliation Claim

Plaintiff's sole remaining Title VII claim is for retaliatory constructive discharge against
the City of New Orleans. Plaintiff alleges that he was constructively discharged because his work

---

[10] Pl's Memo in Opp. 24-25.

environment involved so much harassment and malicious investigation into his job performance, that he felt compelled to resign. He further contends that this constructive discharge was in retaliation for his whistleblowing activity related to the 2013 Taylor Foundation grant, and the filing of his 2014 state court lawsuit.

To establish a prima facie case of retaliation under Title VII, a plaintiff must show that: (1) he participated in a protected activity; (2) he suffered an adverse employment action; and, (3) there is a causal connection between the protected activity and the adverse action. Buisson v. Bd. of Supervisors of the La. Cmty. and Technical Coll. Sys., 592 Fed. Appx. 237, 246 (5th Cir. 2014) (citing Stewart v. Miss. Trans. Comm'n, 586 F.3d 321, 331 (5th Cir. 2009)).

In this case, plaintiff alleges that he participated in two instances of protected activity, his 2013 "whistleblowing" concerning the Patrick Taylor Foundation grant, and his 2014 lawsuit. As previously noted, whistleblowing activity is not protected by Title VII.[11] However, plaintiff's filing of the state court suit based on discrimination allegations is protected activity, satisfying the first element.

Constructive discharge is an adverse employment action if a plaintiff is able to prove the required elements. McCoy v. City of Shreveport, 492 F.3d 551, 557 (5th Cir. 2007). Constructive discharge occurs when plaintiff shows that "working conditions were so intolerable that a reasonable employee in [his] position would [have felt] compelled to resign." Hockman v. Westward Commc'ns, LLC, 407 F.3d 317, 331 (5th Cir. 2004) (quotations omitted). Harassment

---

[11] See supra, note 9.

alone will not establish a constructive discharge claim. Rather, plaintiff must show "aggravating factors" to justify departure, such as demotion, reduction in salary, reduction in job responsibilities, reassignment to menial or degrading work, reassignment to work under a younger supervisor, badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation, or offers of early retirement or continued employment on terms less favorable than the employee's former status. Id. (citations omitted). The inquiry "is an objective, reasonable employee, test under which we ask whether a reasonable person in the plaintiff's shoes would have felt compelled to resign." McCoy, 492 F.3d at 557 (quotations omitted).

In the present case, plaintiff contends that the defendants retaliated against his filing of suit in May 2014 by subjecting him to harassment or humiliation calculated to encourage his resignation and resulting in his constructive discharge. Accordingly, the court considers the allegedly harassing actions occurring after plaintiff filed suit. Those actions are:

- one 2015 PIB complaint by an unidentified party, resulting in no discipline following an appeal;

- one 2015 PIB complaint by Derrick LaFrance, during which the PIB investigator, defendant Barnes, communicated with the district attorney's office to "seek" plaintiff's arrest and sustained some of the misconduct charges, but plaintiff was not disciplined, arrested, or indicted;

- one 2016 PIB complaint by defendant Bouyelas, who was no longer a City employee, that resulted in no discipline;

- one denial of plaintiff's public records request for PIB records after the

14

conclusion of the investigation into the 2016 PIB complaint;

• one 2017 denial of an in-person public records request by defendant Jordan, who allegedly "instructed other NOPD PIB staffers to delete certain computer records";

• one 2018 Civil Service Commission hearing, at which defendant Robins allegedly made "misrepresentations and evasions."

Thus, the alleged harassment constituting intolerable conditions requiring plaintiff's resignation consists of three PIB complaints that resulted in no discipline, two instances of plaintiff being denied access to records he requested, and his participation in a Civil Service Commission hearing, over the course of four years. Accepted as true, these allegations do not amount to harassment so extreme that an objective, reasonable employee would have felt compelled to resign. The court finds that plaintiff has failed to establish that he suffered an adverse employment action, and his Title VII constructive discharge claim against the City of New Orleans is dismissed. Accordingly, all federal claims are dismissed against all defendants.

### C. Pendent State Law Claims

Under § 1367(c), a district court may decline to exercise supplemental jurisdiction if:

(1) a claim raises a novel or complex issue of state law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; and (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

In the Fifth Circuit, the "'general rule' is to decline to exercise jurisdiction over pendent state-law claims when all federal claims are dismissed or otherwise eliminated from a case prior

to trial." <u>Batiste v. Island Recs. Inc.</u>, 179 F.3d 217, 227 (5th Cir. 1999). Here, § 1367(c)(3)

applies because all of plaintiff's federal claims have been dismissed. Additionally, because

plaintiff has ongoing related state court litigation pending since 2014, judicial economy,

convenience, fairness, and comity favor declining to exercise jurisdiction. <u>See</u> <u>Landrum v. Am.</u>

<u>Sec. Ins. Co.</u>, 2007 WL 2490394, at *3 (E.D. La. Aug. 30, 2007).

     For all the of the foregoing reasons,

     **IT IS HEREBY ORDERED** that defendant's **Motion for Judgment on the Pleadings**

(Rec. Doc. 118) is **GRANTED**, and plaintiff's federal claims against all defendants are

**DISMISSED** for failure to state a claim. Plaintiff's state law claims are dismissed for lack of

jurisdiction.

     New Orleans, Louisiana, this _25th_ day of October, 2021.


                               **MARY ANN VIAL LEMMON**
                            **UNITED STATES DISTRICT JUDGE**